**DEBTOR'S EXHIBIT 1**

5/14/2024 12:00:00

**Owner Name:** Regina Brisby-Hamilton                **Prepared As Of:** AM

**Vehicle Description:** 2023          Jeep          Renegade Utility 4D Altitude 4WD 1.3L I4 Turbo

| Year | Make | Model |
|---|---|---|

ZACNJDE16PPP21033          20,687

| | No | Yes | | No | Yes | | No | Yes |
|---|---|---|---|---|---|---|---|---|
| Cruise Control | ☐ | ☒ | Leather Interior | ☒ | ☐ | Radio | ☐ | ☒ |
| Theft Deterrent | ☐ | ☒ | Manual | ☒ | ☐ | Automatic | ☐ | ☒ |
| Power Windows | ☐ | ☒ | Heated Seats | ☒ | ☐ | 4WD/AWD | ☐ | ☒ |
| Power Seats | ☒ | ☐ | Air Conditioning | ☐ | ☒ | 3rd Row Seating | ☒ | ☐ |
| Power Door Locks | ☐ | ☒ | Power Sunroof | ☒ | ☐ | Rear Entertainment | ☒ | ☐ |

Other Items:

| | Good | Fair | Poor | | Good | Fair | Poor |
|---|---|---|---|---|---|---|---|
| Grill | ☐ | ☒ | ☐ | Left Fender | ☐ | ☒ | ☐ |
| Front Bumper | ☐ | ☒ | ☐ | Left Door | ☐ | ☒ | ☐ |
| Hood | ☐ | ☒ | ☐ | Left Quarter Panel | ☐ | ☒ | ☐ |
| Right Fender | ☐ | ☒ | ☐ | Interior | ☐ | ☒ | ☐ |
| Right Door | ☐ | ☒ | ☐ | Engine | ☐ | ☒ | ☐ |
| Right Quarter Panel | ☐ | ☒ | ☐ | Brakes | ☐ | ☒ | ☐ |
| Lights | ☐ | ☒ | ☐ | Paint Finish | ☐ | ☒ | ☐ |
| Rear Bumper | ☐ | ☒ | ☐ | Tires | ☐ | ☒ | ☐ |
| Roof | ☐ | ☒ | ☐ | | | | |

Comments

## Valuation Report: Based on Edmonds

| | Value |
|---|---|
| Average Base Value: | $19,437.00 |
| Mileage Class: Average: | |
| Add-ons/Deducts: | |
| | - |
| | - |
| | - |
| | - |
| | - |
| **Appraised Value:** | **$19,437.00** |

The above vehicle condition report was prepared for the purpose of making a secured loan on said collateral. By signing below, preparer of report certifies that information regarding collateral was ascertained via visual inspection or provided and collected in good faith from owner or owner's representative. Information as to vehicle's condition has been applied with due diligence in conjunction with current publications by an experienced valuation specialist. No other representations, direct or indirect, material or immaterial, are made, assured or implied by this report of any other member of 722 staff or management.

/s/  Jason Rowland

Collateral Valuation Services, LLC
P O Box 8361, Cincinnati, Ohio 45208
(513) 284-8539

| Serial Number (VIN) | Mileage | Plate | Color |
|---|---|---|---|

DEBTOR'S EXHIBIT 2

| **LOAN DISCLOSURE, NOTE AND SECURITY AGREEMENT**<br><br>Account No: _____<br>Loan Amount: $20,570.25<br>Loan Date: _____ | Regina Brisby-Hamilton<br>12518 Colony Hills Ln<br>houston, Texas 77014<br><br>Name / Address of Borrower(s)<br>"You" and "Your" refer to each Borrower<br>above, jointly and severally. | 722 Redemption Funding, Inc.<br>3700B Park 42 Dr., Suite 150A<br>Cincinnati, Ohio 45241<br><br>**"We", "us" and "our"** refer to the Lender above, its successors and assigns. |
|---|---|---|

**Federal Truth-In-Lending Disclosure:**

| **ANNUAL PERCENTAGE RATE (APR) -** The cost of your credit as a yearly rate.<br><br>24.578% | **FINANCE CHARGE -** The dollar amount the credit will cost you.<br><br>$16,909.13 | **AMOUNT FINANCED -** The amount of the credit provided to you or on your behalf.<br><br>$20,310.25 | **TOTAL OF PAYMENTS -** The amount you will have paid after you have made all payments as scheduled.<br><br>$37,219.38 |
|---|---|---|---|

| Your Payment Schedule will be: | Number of Payments:<br><br>66 | Amount of Payments:<br><br>$563.93 | When Payments are Due:<br>On the _____ day of each month beginning<br>____/____/____ |
|---|---|---|---|

| Security: | You are giving a security interest in your automobile or mobile home specifically described below. |
|---|---|
| Late Charge: | You will be charged five percent (5.0%) of the full amount of a scheduled payment or $15.00, which ever is greater, as a late charge on any installment not paid in full within ten (10) days after its due date. |
| Prepayment: | If you pay off this loan early, you will not have to pay an early payment penalty. |
| Note Document: | See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties. |

**Collateral Description:**

| Year | Make | Model | Color | Serial Number |
|---|---|---|---|---|
| 2023 | Jeep | Renegade | | ZACNJDE16PPP21033 |

**PROMISE TO PAY: You, jointly and severally,** promise to pay to our order the amount equal to the **PRINCIPAL AMOUNT OF LOAN** listed as Item (J) under **ITEMIZATION OF AMOUNT FINANCED** plus interest on such unpaid balance at the **CONTRACT RATE OF INTEREST** specified under **ITEMIZATION OF AMOUNT FINANCED.** The actual Finance Charge will be computed on unpaid principal balances outstanding from time to time, for the time outstanding (in accordance with section 1321.57(C)(1)(a) of Ohio Revised Code), together with such other charges as permitted under O.R.C. 1321.57 and agreed to in this Loan Disclosure, Note, and Security Agreement.

The payment amount of each installment specified above was calculated utilizing the Contract Rate of Interest and Principal Amount of Loan using a regular amortization schedule for the term of this loan. The Contract Rate of Interest and the Annual Percentage Rate may not be equal as a result of the classification as finance charges under Regulation Z of the federal Truth-In-Lending Act of certain charges that would not be so classified under O.R.C. 1321.51 to 1321.60. Similarly, the Amount Financed may not be equal to the Principal Amount of Loan as a result of such classifications.

**COLLATERAL: To secure repayment of this loan, you grant to us a security interest in: 1) the motor vehicle/personal property listed above,** complete with attachments, accessories and equipment including all additions and accessions thereto, replacements and substitutions thereof, whether in whole or in part and whenever acquired, and 2) all proceeds, from insurance or otherwise, arising from any disposition thereof (said security interest hereinafter called "Collateral"). Collateral is intended to secure payment of the indebtedness described above, together with delinquency charges as provided and, in the event of default, amounts actually expended for costs and disbursements incurred in legal proceedings to collect the loan or to realize on our security, to the extent permitted by applicable law.

**FINANCE CHARGE:** The Finance Charge consists of interest, origination and credit investigation charges. The Finance Charge disclosed above is computed on outstanding unpaid principal balances on the basis that installments shall have been paid according to contract. Delinquency will increase the Finance Charge as the contract rate is computed on actual unpaid balances of amount financed for the actual time outstanding.

**APPLICABLE LAW:** The laws of the State of Ohio will govern this note and any agreement securing this note. The federal Truth-In-Lending disclosures on the front page hereof are disclosures only and are not intended to be terms of this agreement unless expressly referred thereto herein. The fact that any part of this note cannot be enforced will not affect the rest of this note. Any change to this note or any agreement securing this note must be in writing and signed by you and us.

**ITEMIZATION OF AMOUNT FINANCED**

Amounts disbursed on your behalf:

| | | |
|---|---|---|
| Attorney Fee Escrow Account | $700.00 | (A) |
| ally financial | $19,437.00 | (B) |
| | | (C) |
| Appraisal Fee to: | | |
| Collateral Valuation Services | $0.00 | (D) |
| Single Interest Insurance Premium to: | | |
| Valley National Insurance | $135.00 | (E) |
| Service Contract to: | | |
| | N/A | (F) |
| Lien recording costs, etc. | $38.25 | (G) |
| Loan origination charge* | $250.00 | (H) |
| Credit investigation charge* | $10.00 | ( I ) |
| **PRINCIPAL AMOUNT OF LOAN** | | |
| (Sum of A through I) | $20,570.25 | (J) |
| Prepaid finance charges | $260.00 | (K) |
| **AMOUNT FINANCED** (J minus K) | $20,310.25 | (L) |

*Payable to 722 Redemption Funding, Inc.*

**CONTRACT RATE OF INTEREST**     23.99%

**PREPAYMENT:** You may prepay this loan in whole or in part at any time. If you prepay in part, you must still make each later payment in the original amount as it becomes due until this note is paid in full.

**LENDER'S SINGLE INTEREST INSURANCE,** if written in connection with this loan, may be obtained from any person of your choice that is acceptable to us. If you desire that this insurance be obtained through us, the cost is set forth in the ITEMIZATION OF AMOUNT FINANCED.

**DEFAULT CHARGES AND RETURNED CHECK FEES:** We may collect a default charge (also known as a "Late Charge"). The amount of the Late Charge shall be in accordance with the block indicated above for each full month that any installment is outstanding after the due date of such installment scheduled by the contract. We may collect a Late Charge for one full month for any installment that is past due more than ten (10) days. We may also charge and receive check collection charges not greater than twenty dollars ($20.00) plus any amount passed on from other financial institutions for each check, negotiable order of withdrawal, share draft, or other negotiable instrument returned or dishonored for any reason. Late Charges and returned check fees may be collected at the time they accrue or any time thereafter.

**(Continued on back)**

**POWER OF ATTORNEY**
To facilitate your grant of a security interest in the Collateral, you irrevocably constitute and appoint us to be your attorney-in-fact to perfect our lien with regard to the Collateral and to do such other acts as necessary or convenient thereto.

**By signing below you agree, jointly and severally, to the terms and conditions set forth on the face and reverse of this document and acknowledge receipt of a fully completed copy.**

**NOTICE TO BORROWER(S): DO NOT SIGN THIS LOAN DISCLOSURE, NOTE, AND SECURITY AGREEMENT BEFORE YOU READ IT (FRONT AND BACK) OR IF IT CONTAINS ANY BLANK SPACES.  YOU ARE ENTITLED TO AN EXACT COPY OF THE DOCUMENT YOU SIGN.  THIS LOAN IS MADE UNDER THE AUTHORITY OF O.R.C. 1321.51 TO 1321.60.**

_____          _____
SIGNATURE OF BORROWER                                      SIGNATURE OF CO-BORROWER

## ADDITIONAL TERMS AND CONDITIONS
### (Continued from front page)

**USURY:** The interest rate and other charges on this loan will never exceed the highest rate or charge allowed by applicable law for this loan.

**POST-MATURITY INTEREST:** Interest will accrue on the principal balance remaining unpaid after final maturity at the Contract Rate of Interest specified on the front page hereof. For purposes of this section, final maturity occurs:
(a)  If the note is payable on demand, on the date we make demand for payment;
(b)  If the note is payable on demand with alternative payment date(s), on the date we make demand for payment or on the final alternative payment date, whichever is earlier;
(c)  On the date of the last scheduled payment of principal; or
(d)  On the date we accelerate the due date of this loan (demand immediate payment).

**REAL ESTATE OR RESIDENCE SECURITY:** If this loan is secured by real estate or a residence which is personal property, the existence of a default and our remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of any such separate instrument creating the security interest, by this agreement.

**DEFAULT:** Subject to any limitations in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, you will be in default on this loan and any agreement securing this loan if any one or more of the following occurs:
(a)  You fail to make a payment in full when due;
(b)  You die, are declared incompetent, or become insolvent;
(c)  You fail to keep any promise you have made in connection with this loan;
(d)  You make any written statement or provide any financial information that is untrue or inaccurate at the time it is provided;
(e)  The Collateral securing the loan is damaged, destroyed, seized or stolen;
(f)  You fail to provided any additional security we may require; or
(g)  Anything else happens that causes us to believe we will have a difficult time collecting the amount you owe us.

If any of you are in default on this note or any security agreement, we may exercise our remedies against any or all of you.

**REMEDIES:** Subject to any limitation in the "REAL ESTATE OR RESIDENCE SECURITY" paragraph above, if you are in default on this loan or any agreement securing this loan, we may:
(a)  Cause unpaid principal, earned interest and all other agreed charges you owe us under the loan to be immediately due;
(b)  Use the right of set-off as explained below;
(c)  Demand more security or new parties obligated to pay this loan (or both) in return for not using any other remedy;
(d)  Make a claim for any and all insurance benefits or refunds that may be available on your default;
(e)  Pay taxes or other charges, or purchase any required insurance, if you fail to do these things (but we are not required to do so). We may add the amount we pay to this loan and accrue interest on that amount at the interest rate disclosed on page 1 until paid in full:
(f)  Require you to gather the Collateral and any related records and make it available to us in a reasonable fashion;
(g)  Take immediate possession of the Collateral, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may sell, lease or dispose of the Collateral as provided by law. (If the Collateral includes a manufactured home, we will begin the repossession by giving you an opportunity to cure your default, as required by law.) We may apply what we receive from the sale of the Collateral to our expenses and then to the debt. If what we receive from the sale of the Collateral is less than what you owe us, we may take you to court to recover the difference; and
(h)  Use any remedy we have under applicable state or federal law.

You agree that when we must give notice to you of our intended sale or disposition of the Collateral, the notice is reasonable if it is sent to you at your last known address by first class mail 10 days before the intended sale or disposition. You agree to inform us in writing of any change in your address.

By choosing any one or more of these remedies we do not give up our right to use another remedy later. By deciding not to use any remedy should you be in default, we do not give up our right to consider the event a default if it happens again.

If any of you are in default on this note or any security agreement, we may exercise our remedies against any or all of you.

**COSTS OF COLLECTION:** You agree to pay us all costs and disbursements to which we may become entitled by law in connection with any suit to collect this loan or any lawful activity to realize on any security after default. This provision also shall apply if you file a petition or any other claim for relief under any bankruptcy rule or law of the United States, or if another files such petition or other claim for relief against you.

**SET-OFF:** You agree that we may set off any amount due and payable under this note against any right you have to receive money from us. "Right to receive money from us" means:
(a)  Any deposit account balance you have with us;
(b)  Any money owed to you on an item presented to us or in our possession for collection or exchange; and
(c)  Any repurchase agreement or other non-deposit obligation.

"Any amount due and payable under this note" means the total amount of which we are entitled to demand payment under the terms of this note at the time we set off. This total includes any balance the due date for which we properly accelerate under this note.

If your right to receive money from us is also owned by someone who has not agreed to pay this note, our right of set-off applies to your interest in the obligation and to any other amounts you could withdraw on your sole request or endorsement. Our right of set-off does not apply to an account or other obligation where your rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

We will not be liable for the dishonor of any check when the dishonor occurs because we set off this debt against any of your accounts. You agree to hold us harmless from any such claims arising as a result of our exercise of our right of set-off.

**OTHER SECURITY:** Any present or future agreement securing any other debt you owe us also will secure the payment of this loan. Property securing another debt will not secure this loan if such property is your principal dwelling and we fail to provide any required notice of right of rescission.

**OBLIGATIONS INDEPENDENT:** You understand that your obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it. We may, without notice, release you or any of you, give up any right we may have against any of you, extend new credit to any of you, or renew or change this note one or more times and for any term, and you will still be obligated to pay this loan. We may, without notice, fail to perfect our security interest in, impair, or release any security and you will still be obligated to pay this loan.

**WAIVER:** You waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest.

**PRIVACY:** You agree that from time to time we may receive credit information about you from others, including other lenders and credit reporting agencies. You agree that we may furnish on a regular basis credit and experience Information regarding your loan to others seeking such information. To the extent permitted by law, you agree that we will not be liable for any claim arising from the use of information provided to us by others or for providing such Information to others.

**FINANCIAL STATEMENTS:** You will give us any financial statements or information that we feel is necessary. All financial statements and information you give us will be correct and complete.

**PURCHASE MONEY LOAN:** If this is a Purchase Money Loan, we may include the name of the seller on the check or draft for this loan. Purchase Money Loan means any loan the proceeds of which, in whole or in part, are used to acquire any property securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**SECURED OBLIGATIONS:** This agreement secures this loan (including all extensions, renewals, refinancings and modifications) and any other debt you have with us later. Collateral described in this agreement will not secure other such debts if we fail to give any required notice of the right of rescission with respect to the Collateral. Also, this agreement will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This agreement will last until it is discharged in writing.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** Unless a co-owner(s) of the Collateral signed a third party agreement, you represent that you own all the Collateral. You will defend the Collateral against any other claim. You agree to do whatever we require to perfect our interest and keep our priority. You will not do anything to harm our position.

You will keep the Collateral in your possession (except if pledged and delivered to us). You will keep it at your address unless we agree otherwise in writing.

You will not try to sell or transfer the Collateral, or permit the Collateral to become attached to any real estate, without our written consent. You will pay all taxes and charges on the Collateral as they become due. You will inform us of any loss or damage to the Collateral. We have the right of reasonable access in order to inspect the Collateral. If the Collateral is a motor vehicle, you represent that it is not a vehicle seized pursuant to any federal, state or local forfeiture law.

**INSURANCE:** You agree to buy insurance on the Collateral against the risks and for the amounts we require from a provider reasonably acceptable to us. You will name us as loss payee on any such policy. You will keep the insurance until all debts secured by this agreement are paid. We may require added security on this loan if we agree that insurance proceeds may be used to repair or replace the Collateral. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference.

**FILING:** A copy of this agreement may be used as a financing statement when allowed by law.

**ASSUMPTIONS:** This security agreement and any loan it secures cannot be assumed by someone buying the Collateral from you. This will be true unless we agree in writing to the contrary. Without such an agreement, if you try to transfer any interest in the Collateral, you will be in default on all obligations that are secured by this security agreement.

---

The following notice applies only if the proceeds of this loan have been applied in whole or substantial part to the purchase of goods and/or services from a person who, in the ordinary course of business sells goods and/or services to consumers, and Borrower has been referred to the Lender by the Seller, or Lender is affiliated with the Seller by common control, contract, or business arrangement.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**